IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANLOGIC SCOUT DEVELOPMENT,
LLC, et al.,

                    Petitioners,

          v.

SCOTT HOLDINGS, INC.,

                    Respondent.

CIVIL ACTION
NO. 16-5042

## OPINION

**Slomsky, J.**                                                        **April 30, 2018**

## I.    INTRODUCTION

On September 16, 2016, Petitioners Franlogic Scout Development, LLC, Ed Samane, Lisa Kornstein, Howard Soloway, and Steve Pruitt ("Petitioners") filed a Petition to Compel Arbitration.  (Doc. No. 1.)  On December 14, 2016, Respondent Scott Holdings, Inc. filed a Motion to Dismiss the Petition.  (Doc. No. 2.)  In an Opinion and Order dated July 12, 2017, the Court denied the Petition to Compel Arbitration, granted the Motion to Dismiss, and ordered that the case be closed.  (Doc. Nos. 16, 17.)  Before the Court are Respondent's Motion to Expand the Time to Move for Attorneys' Fees and Motion for Attorneys' Fees.  (Doc. No. 19.)  For reasons that follow, the Court will deny the Motions.

## II.    BACKGROUND

### A.    Factual Background

In 2015, Brian and Jacqueline Scott formed Scott Holdings, Inc. to open retail stores in San Francisco, California.  (Doc. No. 1 ¶ 15.)  On July 30, 2015, Respondent Scott Holdings entered into two agreements with Franlogic Scout Development, LLC ("Franlogic") to purchase

and operate a franchise named "Scout and Molly's," which would sell women's clothing and accessories. (Id. ¶¶ 10, 16, 18.) The two agreements are: (1) an Area Development Agreement ("ADA"), and (2) a Franchise Agreement ("FA"). (Id. ¶¶ 16-18.)

The ADA established the franchisor-franchisee relationship between Franlogic and Scott Holdings. (Doc. No. 14 at 4.) It gave Scott Holdings the "right to develop and establish" two stores within a designated marketing area in San Francisco, California provided that Scott Holdings "open[ed] and commenc[ed] operations of such Stores in strict accordance with the mandatory development schedule." (Doc. No. 2-2 ¶ 1.) It also required Scott Holdings to pay Franlogic a development fee. (Id. ¶ 2.) In addition, the ADA mandated that Scott Holdings enter into a contemporaneous FA for the first store, as well as a separate FA for each additional store that Scott Holdings opened. (Id. ¶¶ 3-4.) In accordance with the terms of the ADA, the parties entered into a FA for the opening of the first store. (Doc. No. 1-1.)

Under the FA, Scott Holdings obtained the right to license the Scout and Molly's proprietary system in order to open one retail store. (Id. ¶ 1.) Scott Holdings paid a $50,000 franchise fee to Franlogic and agreed to pay royalties to Franlogic from revenue generated by the store. (Id. ¶ 3.) The FA required Scott Holdings to find a location to open the first Scout and Molly's store within 120 days of the FA's execution. (Id.)

Under the ADA and FA, disputes between the parties are handled differently. Although the ADA contains a dispute resolution provision, it does not have an arbitration clause. (See Doc. No. 2-1 ¶¶ 12-13.) The FA has an arbitration clause. (Doc. No. 1-1 ¶ 21(a).) Although the two agreements include different dispute resolution provisions, the ADA controls when a conflict arises. In fact, the ADA expressly states that its terms will control in the event of a conflict between the two agreements. (Doc. No. 2-1 ¶ 27.) The ADA states in pertinent part:

> In the event of a conflict between this [Area Development] Agreement and any Franchise Agreements(s), the terms, conditions and intent of this [Area Development] Agreement will control.

(Id.)  In the event of a conflict between the ADA and the FA, the terms of the ADA will govern.

Shortly after purchasing the franchise, Scott Holdings began having problems with opening the Scout and Molly's stores.  (See Doc. No. 1-3.)  The Scotts felt that Franlogic and its officers made false and misleading representations during their negotiations, underestimating the total cost to set up the stores and miscalculating the amount of time the Scotts would need to spend managing the operation.  (Id.)

On July 26, 2016, Respondent Scott Holdings initiated an action against Franlogic in California Superior Court seeking a rescission of the ADA.  (Id.)  In particular, Respondent alleges that Petitioners violated provisions of the California Franchise Investment law, engaged in false advertising, and committed unfair trade practices when negotiating with the Scotts to enter into the ADA.  (Doc. No. 2-6 ¶¶ 32-37, 49-64.)  Respondent alleges that Petitioners made material misrepresentations and induced the Scotts to enter into the ADA, without a full disclosure of the obligations the Scotts would encumber.  (Id. ¶¶ 14-15.)  In that case, Respondent does not seek relief under the FA in California.  (Id.)

On September 16, 2016, Franlogic filed a Notice of Removal, removing the California case from California Superior Court to the United States District Court for the Northern District of California.  (Doc. No. 2-6.)  On October 7, 2016, Franlogic filed its Answer to the Complaint. (Id.)  That case is still being litigated there.  (Id.)

## B.     Procedural History

On September 21, 2016, Petitioners initiated the action before this Court by filing a Petition to Compel Arbitration.  (Doc. No. 1.)  Rather than filing a motion to compel arbitration in California, Petitioners decided to institute an action in this Court.  Petitioners argued that the

FA should govern any controversy between Franlogic and Scott Holdings and that under the FA's dispute resolution provision, the parties should proceed to arbitration. (Id. ¶¶ 21-30.) On December 14, 2016, Respondent filed a Motion to Dismiss the Petition, arguing that the claims raised in the case filed in California were not subject to arbitration. (Doc. No. 2.)

In an Opinion and Order dated July 12, 2017, the Court denied the Petition to Compel Arbitration, granted the Motion to Dismiss, and ordered that this case be closed. The Court held that the dispute in the California action did not fall within the scope of the arbitration agreement in the FA. (Doc. No. 16 at 9.) Instead, the ADA controlled because (1) Scott Holdings sued in California seeking rescission of only the ADA and raising claims not related to the FA; (2) the ADA was the operative agreement; and (3) in the event of a conflict between the ADA and the FA, the ADA controlled. (Id.) Because the dispute did not fall within the scope of the arbitration provision in the FA, the Motion to Compel Arbitration was denied. (Id. at 11.)

On September 22, 2017, Respondent filed a Request to Enter Final Judgment Pursuant to Federal Rule of Civil Procedure 58. (Doc. No. 18.) Because the Court Order dated July 12, 2017 was a final appealable judgment, the Clerk of Court did not enter a final judgment pursuant to Rule 58. Thereafter, on October 6, 2017, almost three months after entry of the Court Order dismissing the action, Respondent filed a Motion to Expand the Time to Move for Attorneys' Fees and a Motion for Attorneys' Fees. (Doc. No. 19.) In the Motion to Expand the Time, Respondent argues that although it moves for attorneys' fees more than fourteen days after entry of the Court Order as required by Federal Rule of Civil Procedure 54(d)(2)(B),[1] its delay is the

---

[1]    Rule 54(d)(2)(B) governs the timing and contents of a motion for attorneys' fees. The Rule provides:

> **(B)** *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:

result of excusable neglect. (Doc. No. 19-1 at 6.) In the Motion for Attorneys' Fees, Respondent contends that it is entitled to attorneys' fees under a provision in the FA that provides for the payment of attorneys' fees incurred by the prevailing party. Because it prevailed in its defense of the Petition to Compel Arbitration, Respondent seeks an award of attorneys' fees. (Id. at 11.) As noted earlier, the Motions will be denied.[2]

## III.    ANALYSIS

Respondent contends that the Court should grant it an enlargement of time in which to file its Motion for Attorneys' Fees because its failure to timely file is the result of excusable neglect. (Doc. No. 19-1 at 7.) Specifically, it asserts that its counsel mistakenly believed that the Court Order was not a final judgment under Federal Rule of Civil Procedure 54 and therefore the time to file the Motion for Attorneys' Fees had not begun. (Id. at 8.) It argues that each of the four factors set forth in Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993), weigh in favor of finding excusable neglect. For reasons that

---

**(i)** be filed no later than 14 days after the entry of judgment;

**(ii)** specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

**(iii)** state the amount sought or provide a fair estimate of it; and

**(iv)** disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B).

[2]    In reaching a decision, the Court has considered its Opinion and Order dated July 12, 2017 (Doc. Nos. 16, 17), Respondent's Motion to Expand Time to Move for Attorneys' Fees and Motion for Attorneys' Fees (Doc. No. 19), Petitioners' Memorandum of Law in Opposition to Motion to Extend Time and in Opposition to Motion for Attorneys' Fees (Doc. No. 20), and the Reply in Support of Respondent's Motion to Expand Time to Move for Attorneys' Fees (Doc. No. 21).

follow, the Court finds that Respondent is not entitled to an enlargement of time to move for attorneys' fees because Respondent's neglect is not excusable.

Federal Rule of Civil Procedure 54(d)(2)(B) provides: "Unless a statute or a court order provides otherwise," a motion for attorneys' fees must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). A judgment includes "any order from which an appeal lies." Fed. R. Civ. P. 54(a). Under Federal Rule of Civil Procedure 6(b), however, when a motion for attorneys' fees is made after the time to file has expired, "the court may, for good cause, extend the time . . . if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); see also Mints v. Educ. Testing Serv., 99 F.3d 1253, 1260 (3d Cir. 1996) (noting that a court can extend the time to file for attorneys' fees under Rule 54(d)(2)(B)).

In the Third Circuit, before allowing an untimely motion under Rule 6(b)(1)(B), a court must apply the four factors set forth in Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993), to determine whether a party's neglect is excusable. Drippe v. Tobelinski, 604 F.3d 778, 784-85 (3d Cir. 2010).

The Pioneer factors are: "(1) the danger of prejudice to the non-movant; (2) the length of the delay and the impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." Id. at 319 (citing Pioneer, 507 U.S. at 395). "All factors must be considered and balanced; no one factor trumps the others." In re Am. Classic Voyages Co., 405 F.3d 127, 133 (3d Cir. 2005) (citing George Harms Constr. Co. v. Chao, 371 F.3d 156, 164 (3d Cir. 2004)). A court must consider "all relevant circumstances surrounding the party's omission." Ragguette v. Premier Wines & Spirits, 691 F.3d 315, 324 (3d Cir. 2012) (quoting Pioneer, 507 U.S. at 395). Whether the party's neglect is "excusable" is an equitable determination. In re Cendant Corp.

PRIDES Litig., 235 F.3d 176, 181-82 (3d Cir. 2000). Here, on balance, the Pioneer factors weigh against finding excusable neglect.

### A.     The Danger of Prejudice to the Non-Moving Party

First, Petitioners would suffer prejudice if Respondent was permitted to file its Motion for Attorneys' Fees. One purpose of the fourteen-day deadline in Rule 54(d)(2)(B) is to provide notice to the opposing party of the claim for attorneys' fees before the time to appeal has lapsed. Fed. R. Civ. P. 54(d)(2)(B) advisory committee's note to 1993 amendment; Hardin v. Se. Pa. Transp. Auth., No. Civ. A. 91-7434, 1998 WL 54713, at *4 (E.D. Pa. Jan. 6, 1998) (finding prejudice where failure to file timely motion for attorneys' fees under Rule 54(d)(2)(B) resulted in lack of notice to opposing party). A party is prejudiced where, for example, "the opposing party has lost evidence or placed substantial reliance on the judgment or there is an increased potential for fraud or collusion." Ragguette, 691 F.3d at 331-32 (citation omitted).

In this case, Respondent filed its Motion for Attorneys' Fees eighty-six days after entry of the Court Order, long after the time for Petitioners to appeal had lapsed. This conduct deprived Petitioners of notice of Respondent's claim for attorneys' fees, which Petitioners allege would have affected their decision to appeal the Order. (Doc. No. 20 at 15.) Although Respondent argues that Petitioners were afforded notice because Respondent made a written offer to settle its claim for attorneys' fees, the offer to settle was made after the time to file a motion for fees had lapsed and therefore did not put Petitioners on notice that a Motion for Attorneys' Fees would be filed.

Moreover, because Respondent filed its Motion for Attorneys' Fees eighty-six days after entry of the Court Order, rather than within the permissible fourteen days, counsel for Respondent likely accumulated greater fees than if he had filed within the time required. (See Doc. No. 19-5 at 11-13.) Respondent is attempting to hold Petitioners responsible for all of their

fees in this case.  Accordingly, allowing Respondent to file its Motion for Attorneys' Fees would create the potential for Petitioners to have to pay a greater amount in attorneys' fees.  Thus, the first factor weighs against finding excusable neglect.

### B.      The Length of Delay and Its Potential Impact on Judicial Proceedings

Second, the length of the delay and its potential impact on judicial proceedings is a neutral factor.  In Murdock v. Borough of Edgewater, the Third Circuit held that defense counsel's more than one-year delay in filing a motion for attorneys' fees weighed against finding excusable neglect.  600 F. App'x 67, 72 (3d Cir. 2015).  The Court noted that despite four years litigating the case, defense counsel did not research the Federal or Local Rules regarding fee applications until nearly a year after the case had settled.  Id. at 72.  The prejudice to the opposing party, coupled with the delay's impact on the judicial process weighed against finding excusable neglect.  Id.  The Court instructed that "[t]here must be finality to litigation," which is "one of the reasons deadlines are established."  Id.  The Court concluded that defense counsel had not established "excusable neglect," and the district court did not abuse its discretion in denying the motion for attorneys' fees.  Id.; see also Raguette, 691 F.3d at 332 (stating that twenty-nine day delay in filing a notice of appeal "was not inordinate" but weighing the delay against the other Pioneer factors, the neglect was not excusable).

By contrast, in In re O'Brien Environmental Energy, Inc., the Third Circuit concluded that a creditor's two-month delay in filing an application for claims central to resolving a bankruptcy case was "not significant in an absolute sense."  188 F.3d 116, 130 (3d Cir. 1999).  The Court held that given the speed with which the creditor moved to resolve the issue, and the fact that the opposing party was equally to blame for the impact of the delay, the length of delay weighed in favor of excusable neglect.  Id.; see also Ostuni v. Wawa's Mart, 3:12-CV-0714, 2013 WL 1632616, at *2 (M.D. Pa. Apr. 16, 2013) (finding that twenty-eight day delay in filing notice

8

of appeal was not significant where plaintiff was pro se, the case had been closed, and no other intervening documents had been filed).

Here, Respondent's Motion for Attorneys' Fees was filed over two months after the deadline had lapsed. Although in an "absolute sense," a more than two-month delay is "not inordinate," counsel for Respondent waited approximately two months before attempting to clarify the Court Order with the Clerk of Court. However, because the Court granted the Motion to Dismiss, and the case was closed, Respondent's failure to file its Motion for Attorneys' Fees did not have a great impact on future deadlines in the case. Nevertheless, there must be finality in litigation, and reopening the case to allow a motion for attorneys' fees would have some adverse impact on the judicial proceedings. Given these circumstances, the length of delay and its potential impact on judicial proceedings is a neutral factor.

## C. The Reason for the Delay

Third, the reason for the delay weighs against finding excusable neglect. Respondent states that the delay was a result of its California counsel's mistaken belief that the Order dated July 12, 2017 was not a judgment under Rule 54 and thus was not an "order from which an appeal lies." (Doc. No. 19-1 at 8.) It contends that the Order did not specify that the case was dismissed with prejudice, and instead, the phrase "closed for statistical purposes" led counsel to believe that further orders or a judgment would be filed. (Id. at 9; Doc. No. 21 at 9.)

Importantly, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." Pioneer, 507 U.S. at 392. Courts have held that counsel's confusion or mistakes in interpreting court orders are not excusable neglect. See In re Woskob, 96 F. App'x 794, 795-96 (3d Cir. 2004) (holding that attorney's confusion as to the deadline to file a notice of appeal was not excusable neglect); In re Paulsboro Derailment Cases, No. 13-0784, 2015 WL 7432825, at *2 (D.N.J. Nov. 23, 2015) (holding that attorney's failure to

9

realize that the court order granted summary judgment, causing him to file an untimely notice of appeal, was not excusable neglect); Snyder v. Fenwal, Inc., Civ. A. No. 08-566, 2009 WL 959865, at *2 (W.D. Pa. Apr. 8, 2009) (finding that counsel's claim that wording in the court order was confusing was not excusable neglect, and advising that counsel should have sought clarification in the time allotted to appeal). The negligence of counsel is imputed to the party. See In re Am. Classic Voyages Co., 405 F.3d at 134 (stating that under Pioneer, counsel's negligence is imputed to the party).

Moreover, in the Third Circuit, it is well-settled that when a court order dismissing a case does not specify that it is without prejudice, the dismissal is an adjudication on the merits. See, e.g., Alston v. Parker, 363 F.3d 229, 232 (3d Cir. 2004) ("The order did not specify whether the dismissal was with or without prejudice, but pursuant to Fed. R. Civ. P. 41(b), we treat the dismissal as an 'adjudication upon the merits.'"); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) ("Because the order did not specify that the dismissal was without prejudice, under Fed. R. Civ. P. 41(b) the dismissal 'operates as an adjudication upon the merits.'").

Here, the Court Order stated: "1. The Petition to Compel Arbitration (Doc. No. 1) is **DENIED**. 2. Respondent's Motion to Dismiss the Petition to Compel Arbitration (Doc. No. 2) is **GRANTED**. 3. This case shall be closed for statistical purposes." (Doc. No. 17.) Counsel's mistake in construing the Federal Rules of Civil Procedure and applying them to the Order is not excusable neglect. Even though the Order did not specify that the case was dismissed with prejudice, the grant of the Motion to Dismiss was a final adjudication on the merits from which an appeal lied. If counsel was confused by the Order, they should have sought clarification from the Court within the time allotted to file a motion for attorneys' fees, rather than over two months later. Thus, the reason for the delay weighs against finding excusable neglect.

### D.    Good Faith

Fourth, whether Respondent acted in good faith is a neutral factor.  The Third Circuit has held that "a party acts in good faith when he acts with 'reasonable haste to investigate the problem and to take available steps toward a remedy."  In re Smiles, 600 F. App'x 838, 841 (3d Cir. 2015) (quoting In re Cendant Corp. PRIDES Litig., 235 F.3d at 184).

In this case, counsel for Respondent states that after receipt of the Court Order, he believed that a judgment would be entered and that he then would have fourteen days to file a motion for attorneys' fees.  (Doc. No. 19-2 ¶ 10.)  On August 4, 2017, twenty-three days after this Court issued its Order denying the Motion to Compel Arbitration and granting the Motion to Dismiss, counsel for Respondent wrote to opposing counsel to settle the claim for attorneys' fees without filing a motion.  (Id.)  He explains that he then began drafting the motion for attorneys' fees, believing that he still had time because a judgment had not been entered in the case.  (Id. ¶ 11.)  He states that he did not become aware that the time to file the motion may have expired until he consulted with local counsel.  (Id.)  He asserts that he filed a Request to Enter Final Judgment Pursuant to Federal Rule of Civil Procedure 58 on September 22, 2017, because he was unsure whether the Court Order was a final judgment.  (Id. ¶ 13.)  Then, on October 6, 2017, he filed the instant Motion to Expand the Time to Move for Attorneys' Fees.  (Doc. No. 19.)

Although counsel for Respondent states that he moved quickly to file the Motion after he became aware of the error, he allowed over two months to pass after entry of the Court Order without making any attempt to clarify with the Court what he now claims was an unclear and confusing Order.  Respondent was put on notice that the Court Order likely was a final judgment when local counsel "cautioned that [a motion for attorneys' fees] could be tardy based on the Order."  (Doc. No. 19-1 at 9.)  In addition, on September 20, 2017, Respondent was put on further notice when, in response to counsel's email, the Clerk of Court explained that a case

11

being closed for statistical purposes meant that "[u]sually no further orders would be issued in the case." (Doc. No. 19-2 ¶ 12.)

Nonetheless, purportedly still unsure of whether the Court Order was a final adjudication, counsel for Respondent filed a Request to Enter Final Judgment, in hopes, it seems, that the Court simply would comply with the request, resetting the clock for him to file a motion for attorneys' fees. In filing the Request to Enter Final Judgment, counsel for Respondent was not completely candid with the Court, especially given local counsel's admonition and the Clerk of Court notifying counsel that when a case is closed for statistical purposes, no further Orders are entered in the case. In the Request to Enter Final Judgment, counsel for Respondent did not state that the reason he was filing the Request in effect was to extend the time in which to file a motion for counsel fees. Under these circumstances, and giving counsel for Respondent the benefit of the doubt, the Court is unable to determine whether Respondent acted in good or bad faith. Therefore, this factor is neutral.

On balance, two <u>Pioneer</u> factors weigh in favor of not finding excusable neglect, two factors are neutral, and no factors support a finding of excusable neglect. Thus, under all of these circumstances, Respondent's neglect was not excusable, and the Court will deny the Motion to Expand Time.[3] (Doc. No. 19.)

## IV. CONCLUSION

For the foregoing reasons, Respondent's Motion to Expand Time to Move for Attorneys' Fees and Motion for Attorneys' Fees (Doc. No. 19) will be denied. An appropriate Order follows.

---

[3] Because Respondent's failure to timely move for attorneys' fees was not the result of excusable neglect, and Respondent will not be permitted to file its Motion for Attorneys' Fees out of time, the Court need not decide on the merits whether Respondent would have been entitled to attorneys' fees had it timely filed its Motion. The Motion for Attorneys' Fees will be denied because it is untimely.